UNITED STATES

v.

David L. MITTELSTEADT, Seaman
Recruit, U.S. Coast Guard.

CGCMS 23857.
Docket No. 892.

U.S. Coast Guard Court of
Military Review.

28 April 1987.

Trial Counsel: LCDR Michael A. Leone, USCG.

Detailed Defense Counsel: LCDR Arthur R. Butler, USCG.

Appellate Government Counsel: LCDR Thomas J. Donlon, USCG.

Appellate Defense Counsel: LT M. Zmaczynski, USCG.

DECISION

PER CURIAM:

Pursuant to his pleas of guilty, appellant was convicted of three unauthorized absences of 37 days, 9 days and 12 days duration, in violation of Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886 and one specification of missing movement of his ship through design in violation of Article 87, Uniform Code of Military Justice, 10 U.S.C. § 887. After presentation of extensive evidence in extenuation and mitigation relating to physical, emotional and personal problems experienced by appellant, including problems relating to alcohol dependence, the court, composed of officer members, sentenced appellant to a bad conduct discharge, confinement for 130 days and reduction to pay grade E–1. In announcing this sentence for appellant's first court-martial conviction, the president of the court, a Coast Guard Captain, stated, "we further recommend that you be given psychiatric evaluation and help during confinement if indicated; that you be afforded the opportunity to attend alcohol, drug rehabilitation during confinement; and that you be encouraged to handle your just debts." (ROT at 191).

Detailed defense counsel, in his response to the District Legal Officer's post trial recommendation to the convening authority, states, without contradiction, that the expressed concerns of the members were not pursued by the Coast Guard. He indicates that the very fact of appellant's being subject to discharge may have prevented treatment/rehabilitation efforts. The convening authority, after considering all matters presented, approved the sentence without modification.

Appellate defense counsel argues that in light of all the facts of this case a punitive discharge is inappropriate and that this Court in fulfilling its Article 66, Uniform Code of Military Justice, 10 U.S.C. § 866

responsibilities should not affirm a sentence which includes such punishment. We disagree. Upon due consideration, we are of the opinion that the sentence announced by the members, and approved by the convening authority is appropriate for the offenses of which the accused stands convicted. The findings and the sentence are affirmed.

Judges BRIDGMAN, BURGESS and GRACE concur.

JOSEPHSON, Judge (concurring in part and dissenting in part.)

Counsel for the accused at the trial and appellate levels have focused much attention on a perceived lack of command or institutional solicitude for the defendant. The attempt to implicate the Command in sharing responsibility for the accused's criminal conduct is not, in my view, a very compelling argument for sentence leniency. Ordinarily, I would view the sentence imposed and approved below in this case—including the bad conduct discharge—to be appropriate for the three unauthorized absence offenses and one missing movement through design, even in light of all the matters presented in extenuation and mitigation. Certain misleading information bearing on the ultimate sentence was communicated to the members, however, which would prompt me to reassess the sentence.

In response to questioning by the trial counsel, the commanding officer stated that the confinement facility possessed alcohol counselors and professional psychologists who were available to confinees. During closing argument trial counsel reinforced this statement as follows:

> When people think about a court-martial and a sentence it's the confinement and the amount of time a person is in jail that's important. That's a matter that is extremely necessary in this case, and there's more than one reason for that. If we look back to all the counselling sessions that the command and the Coast Guard has given him, whether it be professional medical people, whether it be financial, whether it be alcohol or any of that nature the thing that worked best is when he worked at the correctional custody unit. Maybe there's enough rehabilitation potencial [sic] in it that Seaman Apprentice Mittelsteadt, if he goes to confinement, would at least be a productive member of the civilian community when he leaves. If he goes to confinement and at confinement can receive some of the professional help that is available at the Great Lakes Center then maybe he would be able to come around. Certainly it is an opportunity for him to salvage himself while he's at the correctional unit.

ROT at 181.

Rather than receiving this indicated rehabilitative assistance, trial defense counsel has stated that such professional help was refused by authorities at the Navy Confinement Facility because of the pending bad conduct discharge.

While the precise effect of the information concerning professional rehabilitation assistance during confinement on the members' sentence determination of a bad conduct discharge and more than four months confinement cannot be ascertained with absolute certainty, it clearly was on their minds as evidenced by their sentence recommendation that the accused receive such help. If the members had known that such professional services would not have been available to a prisoner with a bad conduct discharge, they might very well have chosen not to award such a discharge or they may have imposed a lesser period of confinement since the expected benefits from the four months confinement would not be forthcoming. The potential sentencing prejudice from the misinformation presented to the court convinces me that meaningful remedial action is in order.

Little useful purpose would be served in returning the record for a rehearing on the sentence. Moreover, since all confinement

has been served, reduction of that aspect of the sentence at this point would be of no benefit to the accused. Only the punitive discharge remains to be mitigated in any real sense. In order to provide meaningful sentence relief from the possible prejudicial misinformation conveyed to the court I would commute the discharge to the maximum permitted forfeiture of pay. For this reason, I dissent from the majority's decision affirming the approved punitive discharge. Otherwise, I concur with majority's action affirming the findings and the remainder of the sentence.

Chief Judge BAUM concurs with Judge JOSEPHSON.